

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 19, 2016

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Bevan Cooney, et al.,</u>
                S1 16 Cr. 371 (RA)

Dear Judge Abrams:

      The Government writes in response to the letter submitted to the Court by counsel for defendant Bevan Cooney, dated December 16, 2016 ("Cooney Ltr."), in which Cooney requests that the Court permit him to file Form CJA 23 affidavit (the "Affidavit") under seal and deny the Government access to the Affidavit. Cooney's position is contrary to the terms of the Criminal Justice Act Plan developed by the Board of Judges in this District and developed case law on this issue. As a result, Cooney's request that this Court block the Government's access to his Affidavit should be denied.

      The Criminal Justice Act directs "each United States District Court [to] set in place a plan for furnishing representation for any person financially unable to obtain adequate representation." 18 U.S.C. § 3006A; *see also United States* v. *Hilsen*, 03 Cr. 919 (RWS), 2004 WL 2284388 at *3 (S.D.N.Y. Oct. 12, 2004). According to the Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act as adopted on March 1, 2016 (the "CJA Plan") by the Board of Judges of this District, a defendant who is unable to afford counsel may establish his eligibility for appointed counsel either "1) by affidavit sworn to before a district judge, magistrate judge, court clerk, deputy clerk, or notary public; or 2) under oath in open court before a district judge or magistrate judge." CJA Plan ¶ VI(C). Moreover, "[w]henever possible, the standard forms provided by the Administrative Office of the United States Courts shall be utilized in such inquiry." *Id.* In addition, "At the time of determining financial eligibility, the judicial officer shall inform the person seeking appointment of counsel of the penalties for making a false statement, and of the obligation to inform the Court of any changes in his or her financial status." *Id.*

It is the defendant's burden to establish financial eligibility for appointed counsel. *Hilsen,* 2004 WL 2284388 at *3 (citing *United States* v. *O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997)). The defendant must "prove by a preponderance of the evidence that he is financially unable to afford counsel." *Id.* (citing *United States* v. *Harris*, 707 F.2d 653, 660 (2d Cir. 1983)). "[W]here a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel. If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated." *Harris*, 707 F.2d at 661.

The CJA Plan guards against a potential conflict between a defendant's Fifth and Sixth Amendment rights by limiting the adversarial use of a defendant's statements. In fact, "The Government may not use as part of its direct case, other than a prosecution for perjury or false statements, any information provided by a defendant in connection with his or her request for the appointment of counsel pursuant to this plan." CJA Plan VI(E). This safeguard protects against the possibility that the defendant may be forced to waive his Fifth Amendment right against self-incrimination because the Government cannot use information provided in a CJA financial affidavit in its case-in-chief. On the other hand, the Government's role in ensuring that the Court receives an accurate picture of the defendant's finances is important, as the Government is often in a better position to assess the validity of a defendant's assertions related to his financial circumstances in light of its investigation.

These principles and protections were articulated by the Second Circuit in *Harris*, the controlling case in this Circuit on the issue. In *Harris*, the Court of Appeals upheld a district court's termination of CJA counsel following the defendant's refusal to submit evidence of his inability to afford counsel in a proceeding that was not *ex parte* and under seal, reasoning that "'facts are best determined in adversary proceedings,' the importance of which process outweighs any 'speculative possibility of inadequate protection of defendant's fifth amendment rights,' particularly where those rights are otherwise protected by limitations imposed on the government's use of information supplied by a defendant in aid of his or her application for appointed counsel." 707 F.2d at 654, 659, 662-63. *See also Hilsen*, 2004 WL 2284388 at *11 ("Where, as here, a defendant has sought to file a CJA 23 *ex parte* and under seal, and that application has been denied because the assertion of a Fifth Amendment privilege is both premature and speculative, it is appropriate to reiterate the protection afforded the defendant in this circuit, namely, that should the defendant choose to submit a CJA 23 or otherwise place before the court financial information setting forth his or her eligibility the government shall not be permitted to use as part of its direct case any testimony given by the defendant in support of his or her application for assignment of counsel."); *United States* v. *Coniam,* 574 F. Supp. 615 (D. Conn. 1983) (reversing a magistrate judge's order sealing a defendant's financial affidavit where the court's review of the affidavit revealed that it contained nothing likely to constitute a disclosure protected by the Fifth Amendment and the defendant had 'merely suggested' that unsealing the affidavit might provide the government with access to information that might be developed into inculpatory evidence without supplying any specific details in support of the speculation."); *United States* v. *Durante*, No. 15 Cr. 171 (ALC) (S.D.N.Y.) (Docket Entry 68 at 19-20 ("I'm not inclined to believe that my

2

determination of his eligibility for appointment of counsel should be done ex parte."); 21 ("This needs to be done in open court. This should not be done in an ex parte manner.")).[1]

In support of his argument that his Affidavit should be shielded from disclosure, Cooney cites *Hilsen* for the principle that where Fifth Amendment concerns are more than speculative, "neither *Braker* nor *Harris* precludes the courts of this circuit from adopting, at their discretion, any of a variety of protections for defendants seeking to establish their eligibility for appointed counsel under the CJA[.]" (Cooney Ltr. at 1) (citing *Hilsen*, 2014 WL 2284388 at *8).[2] As a preliminary matter, however, this truncated citation offers a misleading impression of the court's decision in that case. The full quotation, which reads as follows, offers an altogether different picture:

> Although neither *Braker* nor *Harris* precludes the courts of this circuit from adopting, at their discretion, any of a variety of protections for defendants seeking to establish their eligibility for appointed counsel under the CJA, the balance struck by the Court of Appeals in *Harris* in addressing potential tensions between the Fifth and Sixth Amendments defines the guiding principles for the implementation of any such discretionary protections, as the decisions in *Bryser, Coniam, Hennessey* and *Herbawi* demonstrate and as the recently adopted CJA Plan of our district reaffirms. Hilsen has not established any basis for this Court to deviate from the adversarial, open approach explicitly endorsed in *Harris* or to conclude that the protections spelled out in *Branker, Harris,* and *Bryser* are inadequate here.

As the full citation makes clear, it would be a highly unusual case in which the protections offered by the CJA Plan and *Harris* would be inadequate and the defendant here has done nothing to show that his case is anything but ordinary. Indeed, the defendant in *Hilsen*, who was not permitted to file an *ex parte* CJA Affidavit, faced far less speculative Fifth Amendment concerns than the defendant here. While Hilsen's financial situation was directly relevant to the charge against him of unlawful failure to pay court-ordered child support, Cooney's financial situation is tangential to the charged securities fraud. Because Cooney's Fifth Amendment concerns are both speculative and run-of-the-mill, he has done nothing to demonstrate that the extraordinary remedy of an *ex parte* submission is necessary or appropriate.

Cooney's arguments concerning the Government's position at his bail hearing do nothing to alter that analysis. On June 8, 2016, the parties appeared before Your Honor for arraignment.

---

[1] Indeed, this very issue was previously raised by counsel for Jason Galanis, but was withdrawn prior to a decision by the Court. *United States* v. *Galanis*, No. 16 Cr. 371 (RA) (S.D.N.Y.) (Docket Entry 70; 75).

[2] Cooney fails to cite a single case in which a District Court in fact permitted the *ex parte* filing of a CJA Affidavit.

The Government indicated that it believed Cooney could be released on a bond but was hamstrung in determining the appropriate amount of any such bond because very little information about Cooney's financial situation was included in his pretrial services report ("PSR"). Defense Counsel proffered that the information in the PSR was accurate and that Cooney owned a house with $100,000 in equity, two cars, and a checking account with approximately $60,000. (June 8, 2016 Tr. at 15-16). The Government then proffered that it had information which suggested that Cooney's proffer was inaccurate. (*Id.* at 16-17). More specifically, the Government proffered that in 2014/2015 Cooney had obtained a $1.2 million bank loan, in connection with which he represented that he had a net worth of $15 million. (*Id.*). Defense counsel responded that the facts proffered by the Government were "not actually appropriately before the Court," that the loan in question was "years ago," and that the defendant's appearance at arraignment demonstrated that there was no need for a "substantial bond." (*Id.* at 18). The Court then set a $1,000,000 bond. (*Id.* at 18).

Cooney argues that *ex parte* of submission of his Affidavit is necessary "[b]ecause the government previously used Mr. Cooney's financial statements in an incriminatory manner." (Cooney Ltr. at 2). But the Government in no way attempted to use Cooney's factual representations as evidence of the charges against him. To the contrary, the Government merely brought to the Court's attention facts suggesting that Cooney's factual proffers were inaccurate and argued that any inaccuracy should affect the amount of any bond. Cooney now argues that the Government should not be able to access his Affidavit because the Government might similarly challenge its veracity. But this is exactly why the Government must have access to Cooney's Affidavit – because the Government is in the best position to identify any inaccuracies. Indeed, the CJA Plan expressly endorses this view in recognizing that the defendant's CJA Affidavit *may* be used in any prosecution for perjury or false statements. Allowing a defendant to shield his statements from the Government for fear that the Government might seek to bring such a prosecution would undercut the law of this Circuit and the CJA Plan, both of which recognize the need for adversarial participation to prevent false information from being provided to the Court. As a result, Cooney's request that this Court accept the Affidavit *ex parte* should be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s Rebecca Mermelstein
    Brian R. Blais
    Aimee Hector
    Rebecca Mermelstein
    Assistant United States Attorneys
    (212) 637-2521/2203/2360

cc: All counsel of record (by electronic mail)