

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 2, 2017

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    **United States v. Devon Archer et al.,**
               **S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

      The Government writes in opposition to defendant Devon Archer's motion[1] for a stay of the Court's order (the "Order") denying his motion to delay Google's production to the Government of certain emails in an account used by Archer that are within the scope of a lawfully-obtained search warrant (the "Warrant") and to delay the Government's review of certain emails produced by Apptix, which were also within the scope of the Warrant.  Archer cannot make the requisite showings he must make to support the implementation of a stay.  Given the speculative nature of the harm posited by Archer, as well as the availability of suppression, disqualification and other remedies, Archer cannot establish that any purported injury to him resulting from the Government's review of the emails within the scope of the warrant is "irreparable."  Additionally, Archer cannot establish that his appeal is likely to succeed on the merits for at least two reasons.  First, the Court of Appeals is almost certain to conclude, given the interlocutory nature of Archer's proposed appeal, that it lacks jurisdiction to reach the merits of any such appeal.  Second, even if the Court of Appeals were to reach the merits of Archer's appeal, his claims fail, as the Warrant contained sufficient particularity and was not required to outline a specific protocol governing the Government's review of materials falling within the scope of the Warrant.

**Legal Standard**

      The Government agrees with Archer that the standard for a stay pending an interlocutory appeal is outlined in *Mohammed v. Reno*, 309 F.3d 95, 100-01 (2d Cir. 2002).  In order to determine whether a stay should be entered pending an interlocutory appeal, a court must weigh "the

---

[1] Defendant Bevan Cooney joins in Archer's motion for a stay.

likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest." *Id.*

**Discussion**

    I.    **Archer Cannot Establish a Likelihood of Success on the Merits**

        *A. The Court of Appeals Lacks Jurisdiction to Hear Archer's Proposed Appeal*

As an initial (and dispositive) matter, Archer cannot demonstrate a likelihood of success on the merits of his claim because the Court of Appeals lacks jurisdiction to hear his interlocutory appeal. The availability of interlocutory relief in criminal matters is substantially circumscribed. "The final judgment required for appellate review under §1291[2] normally does not occur in a criminal case until after conviction and sentencing[,]" *United States v. Miller*, 14 F.3d 761, 764 (2d Cir. 1994), and thus interlocutory appeals in criminal matters are "limited to three narrow classes of cases: denial of a motion to dismiss based on the Double Jeopardy Clause, requiring the posting of excessive bail, and violations of the Speech or Debate Clause," *id.* (internal citations omitted). *See also United States v. Levy*, 947 F.2d 1032, 1034 (2d Cir. 1991) ("Interlocutory appeals in criminal cases are 'disfavored,' and have been recognized as exceptions to the final judgment rule, only in those limited circumstances where the right sought to be vindicated would be totally lost if appeal occurred only after final judgment."); *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) ("We have interpreted the collateral order exception 'with the utmost strictness' in criminal cases"); *United States v. Culbertson*, 598 F.3d 40, 46 (2d Cir. 2010) ("The [Supreme] Court has long held that the policy of Congress embodied in [the final order rule] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation, and that this policy is at its strongest in the field of criminal law. This is so because undue litigiousness and leaden-footed administration of justice, the common consequences of piecemeal appellate review, are particularly damaging to the conduct of criminal cases. In this regard, the Court has noted that [p]romptness in bringing a criminal case to trial has become increasingly important as crime has increased, court dockets have swelled, and detention facilities have become overcrowded." (internal citations and quotations marks omitted)).

Archer nonetheless contends that appellate jurisdiction is proper under the collateral order doctrine. (Archer Letter, dated February 1, 2017 ("Archer Ltr.") at 6). In particular, Archer argues that the Court of Appeals has jurisdiction over his appellate claims under the so-called *Perlman* doctrine (referencing *Perlman v. United States*, 247 U.S. 7 (1918)). *Perlman* and its progeny allowed for appellate jurisdiction over claims by privilege holders stemming from production orders directed at third parties. In light of subsequent case law development, the validity of *Perlman*—at least in circumstances where the privilege holder is a party to the litigation and can appeal from a final judgment—is in serious doubt. *See United States v. Punn*, 737 F.3d 1, 11 n.8 (2d Cir. 2013)

---

[2] 28 U.S.C. § 1291 provides that "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States, . . . except where a direct review may be had in the Supreme Court."

("We express no opinion as to whether, given subsequent case law development, an order denying a client's motion to quash a subpoena directed to his attorney, when the client is already under indictment or a party to litigation, would still be immediately appealable today."). Indeed, the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599 (2009) casts doubt on *Perlman*'s ongoing validity. In *Mohawk*, the defendant-employer in a civil employment action appealed a district court's order compelling the production of documents that the defendant maintained were protected by the attorney-client privilege. The Court of Appeals dismissed the appeal for want of jurisdiction, and the Supreme Court affirmed. *Id.* at 107-08. The Supreme Court concluded that the appeal did not fall within the collateral order doctrine because "collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege," the vitality of which can be adequately protected through appeals from final judgments. *Id.* at 108.

Although the Second Circuit has not yet had occasion to resolve the tension between *Perlman* and *Mohawk*, the Sixth Circuit has held, and the Seventh, Ninth and Tenth Circuits have stated in dicta, that in cases where a privilege holder is a party to the litigation and thus can vindicate his rights through an appeal from a final order, interlocutory jurisdiction under *Perlman* does not survive *Mohawk*. *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 238 (6th Cir. 2011) ("In the instant case, where the privilege holder is a party to the litigation with recourse in a post-judgment appeal, we conclude that *Perlman* no longer affords jurisdiction to hear this interlocutory appeal."); *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010) ("*Mohawk Industries* calls *Perlman* and its successors into question, because, whether the order is directed against a litigant or a third party, an appeal from the final decision will allow review of the district court's ruling. Only when the person who asserts a privilege is a non-litigant will an appeal from the final decision be inadequate."); *United States v. Krane*, 625 F.3d 568, 572-73 (9th Cir. 2010) ("*Mohawk* forecloses interlocutory appeal of some district court orders in reliance on the fact that 'postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege.' . . . Further, in this case, neither the privilege holder nor the custodian of the relevant documents are parties to the underlying criminal proceedings. Thus, for all practical purposes, this appeal is [movant]'s only opportunity to seek review of the district court's order adverse to its claims of attorney-client privilege." (internal citations omitted)); *United States v. Copar Pumice Co., Inc.*, 714 F.3d 1197, 1208 (10th Cir. 2013) ("Even if we were not bound by our precedent limiting *Perlman* to criminal grand jury proceedings, the persuasiveness of the cases relied upon by Defendants to extend *Perlman* here—a civil action where the privilege holder is a party—is greatly undermined, if not entirely foreclosed, by *Mohawk*."); *but see In re Grand Jury*, 705 F.3d 133 145 (3d Cir. 2012) ("we decline to hold that the Supreme Court narrowed the *Perlman* doctrine—at least in the grand jury context—*sub silentio*."). In light of the development of the law in other circuits, and given that Archer, as a party to this criminal proceeding, has the ability to vindicate his rights in an appeal from any final judgment, it appears likely that the Court of Appeals in this circuit would decline jurisdiction of any appeal by Archer under the *Perlman* doctrine.

As an alternative basis for jurisdiction, Archer argues that the Court of Appeals has jurisdiction under 28 U.S.C. § 1292(a)(1) because the Court's order denying Archer's request for relief was akin to the denial of a request for the entry of an injunction. (Archer Ltr. at 8). This

3

argument strains credulity. A pretrial order in a criminal matter does not constitute "injunctive relief," regardless of how the underlying request is styled. *See, e.g.*, *John Doe Corp. v. United States*, 714 F.2d 604, 605 (7th Cir. 1983) (appellate court lacked jurisdiction to hear appeal of a district court's denial of a motion for a temporary restraining order seeking to prevent a grand jury from returning an indictment against the movant, premised on a claim that such an indictment violated the terms of a prior plea agreement with the movant, because "the plea agreement itself arose in a *criminal* context and the corporation sought to avoid *criminal* charges" and "[i]nterlocutory appeals from criminal pretrial orders are prohibited, unless they arise under an explicit exception to the final judgments rule." (emphasis in original)). Indeed, because many pretrial orders in criminal cases are sought to require an individual or entity to take an action, such as to compel production of a document, or to foreclose an individual or entity from taking an action, like offering potentially inadmissible evidence at trial, a significant quantity of pretrial orders in criminal matters could be classified, under Archer's reading, as orders for injunctive relief. Under this broad reading, all such orders (or denials of request for such orders) would be appealable on an interlocutory basis. The broad prohibition on interlocutory appeals of pretrial orders in criminal cases would thus be swallowed by the injunctive relief exception. Archer cites no criminal case – and the Government is aware of none – where a Court of Appeals has grounded interlocutory jurisdiction on the categorization of requested pretrial relief in a criminal matter as "injunctive."

For these reasons, the Court of Appeals lacks interlocutory jurisdiction over Archer's claims. As the holder of the privilege and a criminal defendant in this matter, Archer can appropriately vindicate whatever rights he may claim were violated by this Court's pretrial rulings in any appeal from final judgment. Because Archer cannot establish that the Court of Appeals has interlocutory jurisdiction over his present claims, *a fortiori*, he cannot demonstrate that his claims have the likelihood of success on appeal.

> B. *Even Assuming the Court of Appeals Were to Exercise Jurisdiction, Archer Cannot Show the Likelihood of Succeeding on the Merits of His Appeal*

Archer advances two alleged deficiencies in the Warrant which he claims are likely to result in the suppression of all materials called for by the Warrant, neither of which carry a likelihood of success.[3]

First, Archer claims the Warrant is lacking in particularity, facially overbroad, and equivalent to an unconstitutional "general search" because it seeks the entire contents of Archer's email accounts as well as other electronic data captured by the internet service provider. (Archer Ltr. at 11). Archer's argument is both factually and legally inaccurate.

The particularity requirement of the Warrants Clause of the Fourth Amendment "guards against general searches that leave to the unguided discretion of the officers executing the warrant

---

[3] It should be noted that defense counsel's suppression arguments are the same as those advanced at the January 31, 2017 conference, even though he now has full access to an unredacted copy of the Warrant and supporting affidavit.

4

the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990). The requirement is satisfied if the warrant, including its attachments, enables the executing officer to ascertain and identify with reasonable certainty those items that the magistrate judge has authorized him or her to seize. *See Groh v. Ramirez*, 540 U.S. 551 (2004); *United States v. Rosa*, 626 F.3d 56, 58 (2d Cir. 2010). To satisfy the particularity requirement, the crime or crimes under investigation generally should be apparent from the face of the warrant; a warrant cannot, for example, call for seizure of all "records," or all evidence "relating to the commission of a crime," without further particularization. *United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993). Relatedly, "the warrant must specify the 'items to be seized by their relation to designated crimes.'" *United States v. Galpin*, *Galpin*, 720 F.3d 436, 446 (2d Cir. 2013)

The probable cause and particularity requirements intersect in the doctrine of overbreadth. As to each category of evidence identified for seizure in the warrant, there must exist probable cause to believe it is relevant to the investigation at issue. *See Galpin*, 720 F.3d at 448 (warrant was overbroad where it allowed seizure of items related to crimes as to which no probable cause showing had been offered or made); *United States v. Lustyik*, 57 F. Supp. 3d at 228 ("the overbreadth inquiry asks whether the warrant authorized the search and seizure of items as to which there was no probable cause") (quotation marks and citation omitted); *United States v. Hernandez*, 2010 WL 26544, at *7-8 (S.D.N.Y. 2010) (framing overbreadth inquiry as "whether the magistrate judge authorized search warrants that were constitutionally overbroad because they provided for the seizure of specific items for which there is no probable cause").

The Warrant is sufficiently particularized and not overbroad. Despite Archer's false characterization, the Warrant does not authorize the seizure of the entire contents of the identified email accounts. To the contrary, the Warrant clearly supplies sufficient limiting guidance to the executing officers by identifying the specified crimes under investigation and providing a further illustrative list of the items to be seized. Specifically, the Warrant seeks "any evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1348, and Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5; conspiracy to commit securities fraud, in violation of Title 18, United States Code, Section 371; investment advisor fraud, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17; and conspiracy to commit investment adviser fraud, in violation of Title 18, United States Code, Section 371." (Search Warrant, 16 Mag 8347, at 3). The Warrant is further particularized by the identification of categories of evidence to be seized, including, *inter alia*, "evidence of the agreement to engage in the fraudulent scheme involving the issuance of bonds on behalf of the Wakpamni Lake Community Corporation ("WLCC") and the misappropriation of the proceeds of those bonds, from January 1, 2014 to May 11, 2016;" "evidence of communications and/or meetings involving or related to the bonds issued on behalf of the WLCC;" and other evidence of user identity, location, and identities and locations of co-conspirators. *Id.* at 3-4. Moreover, the Warrant is not overbroad, as the categories of items described are directly relevant to the probable cause articulated in the accompanying affidavit and limited to the relevant timeframe.

The cases cited by Archer, all of which involved essentially limitless search and seizure of electronic information, stand in stark contrast to the Warrant at issue here. *See Galpin*, 720 F.3d

at 447 (warrant allowed for the seizure of all "data…which may reveal evidence and substantiates violations of" any and all New York state and federal statutes.); *United States v. Otero*, 563 F.3d 1127, 1132-33 (10th Cir. 2009) (concluding that warrant that authorized a search of "any and all information and/or data" stored on a computer without any limitation whatsoever lacked particularity); and *United States v. Payton*, 573 F.3d 859, 863 (9th Cir. 2009) (holding that officers' search of a computer during execution of a search warrant for a house for evidence of drugs violated Fourth Amendment in absence of any evidence suggesting computer may be a repository of the evidence sought in the search).

Second, Archer argues that the warrant is facially defective because it did not contain a protocol for handling privileged information. (Archer Ltr. at 12). Archer cites no case—and the Government is not aware of any—holding that a review protocol governing potentially privileged is required to be specified on the face of a warrant. *See Galpin*, 720 F.3d at 451 ("Unlike the Ninth Circuit, we have not required specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants, and we do not impose any rigid requirements in that regard at this juncture."). Notwithstanding the Second Circuit's declaration that no specific review protocol is required, Archer suggests that *United States v. Hunter* "recognize[s] that such procedures need to be part of the warrant itself, and not merely something the government adopts ad hoc after the fact." (Archer Ltr. at 12 (citing *United States* v. *Hunter*, 13 F. Supp. 2d 574, 583 (D. Vt. 1998)). Archer's characterization of *Hunter* is inaccurate. In fact, *Hunter* explains that the instructions regarding privilege review were in the "warrant application," not on the face of the warrant itself, and nowhere suggests that inclusion of such protocols in the warrant or affidavit is a requirement under the Fourth Amendment. *Id*. at 583. Further, the warrant in *Hunter* concerned the search of the home and office of a lawyer, which obviously raises more substantial and complicated privilege issues than the search of a premises or the electronic accounts of a non-lawyer, such as Archer. In fact, it is often the case that the existence of privileged communications is discovered during execution of a warrant, at which time protocols are put into place to protect the privilege. *See, e.g.*, *United States v. Lumiere*, 16 Cr. 483, 2016 U.S. Dist. LEXIS, at *17-18 (S.D.N.Y. Nov. 29, 2016) (JSR) (in review of a warrant that "mandated no special procedures for avoiding privileged documents" court held that case agent's review of emails while "keep[ing] an eye out" for defense counsel's name was sufficient where agent acted in good faith and in conformity with the warrant). Moreover, the fact that privilege protocols are not a required element of a valid warrant is evident from the remedy for its breach: "the general remedy for violation of the attorney-client privilege is to suppress the introduction of the privileged information at trial, not to order wholesale suppression." *Lumiere*, 2016 WL 7188149, at *15 (internal citation omitted).

## II. Given the Speculative Nature of the Harm and the Availability of Other Remedies, Archer Cannot Establish Irreparable Injury

The irreparable injury that Archer claims he might suffer if the stay is not granted can be simply stated: in its review of the results of the search warrant, the Government might inadvertently encounter attorney-client privileged materials. (Archer Ltr. at 3-4). Archer has not established that any such injury is irreparable. First, such injury is entirely speculative. The Government has not

begun any review of the materials at this point and the Government intends to implement measures, including the use of a taint team, to minimize the potential of any such injury. *See Strougo v. Barclays PLC*, 2016 WL 3702740 (S.D.N.Y. Jul. 5, 2016) ("To establish irreparable injury, Defendants have the burden of showing injury that is not remote or speculative but actual and imminent. Furthermore, they must demonstrate that the injury cannot be remedied absent a stay and for which a monetary award cannot be adequate compensation.") (internal quotation marks and citations omitted)). Second, in light of the Government's intention to use taint procedures, Archer cannot show that the injury he advances is "actual and imminent." And, in any event, if such an injury was to occur, any such injury is not an "irreparable" one, that is, one which cannot later be remedied. If Archer determines that the Government encountered privileged materials during its review of the email accounts subject to the Warrant, he can seek suppression of those materials; he can seek a taint hearing, at which the nature of any taint is explored; and, in an extreme case, he can seek disqualification of any member of the Government team who encountered the privileged materials. Thus, Archer is not without potential remedy for the injury he claims.

Archer devotes a large portion of his irreparable injury argument to quibbling with the Government's use of a "taint team" to review the emails to be produced pursuant to the Warrant. (Archer Ltr. at 3-4). At the oral argument on Archer's motion, the Government stated that it would be prepared to discuss the review protocol with Archer's counsel. If Archer believes that the Government's proposed review protocol is inadequate, there is nothing preventing Archer from filing a motion with this Court seeking an order directing that the Government use a particular or alternative review protocol. Again, Archer has additional remedies that he can pursue to address any purported injury he might suffer from the Government's review of material obtained pursuant to a lawfully-issued warrant. Thus, he cannot demonstrate that his purported injury—one that is entirely speculative at this point—is "irreparable."

### III. Both the Prejudice to the Government and the Public Interest In Prompt Resolution of Criminal Cases Counsel Against the Grant of a Stay

Both the public's and a criminal defendant's strong interest in the prompt resolution of criminal cases is enshrined in our Constitution and statutes. *See* U.S. Const., amend. VI; 18 U.S.C. § 3161 *et seq*. In recognition of these interests, the Second Circuit has stated that the policy embodied in Congress's limitations on interlocutory appeals pursuant to § 1291 is "'at its strongest in the field of criminal law' because 'undue litigiousness and leaden-footed administration of justice,' the common consequences of piecemeal appellate review, are 'particularly damaging to the conduct of criminal cases.'" *Culbertson*, 598 F.3d at 46 (internal citations and quotation marks omitted). If this Court stays its Order so that Archer can litigate this issue in the Second Circuit, it will substantially delay the Government's review of the materials produced pursuant to the Warrant and, potentially, the trial of this matter, to the detriment of not only the public interest but also the interest of Archer's co-defendants, the majority of whom have no standing and have not joined his motion. The prejudice from such a delay is further evidenced by the fact that appellate litigation at this time may be a waste of judicial time and resources, as the Government has not yet ascertained whether any materials falling within the scope of the Warrant even exist, or, indeed, whether the Government has any intention to use any such materials at a trial of this matter.

Moreover, the Government will be prejudiced by the grant of a stay. First, the unavoidable delay that would accompany a stay and litigation in the Second Court would impede the Government's review of potentially voluminous electronic records in preparation for trial, a date for which this Court has indicated will be set at the next conference. Second, the delay would also prevent the Government's ability to take further investigative steps based on information gleaned from the search warrant results.  Some of those investigative steps – for example, the possible identification of witnesses, additional email accounts for which the Government has probable cause to search, telephone numbers as to which additional data could be obtained – could be impeded or rendered impossible with the passage of time.  Although Archer argues that the Government should not be permitted to take such steps because, if his efforts to quash the Warrant were successful, any evidence derived from the materials produced pursuant to the Warrant would themselves be suppressible as the fruit of the poisonous tree, this argument is misplaced.  Archer would have the separate ability to move to suppress related evidence at any time prior to trial, while the Government has no redress for the passage of time that delays the Government's review of evidence obtained pursuant to a lawfully-issued warrant.  Finally, a ruling that would enable criminal defendants to delay the execution of post-indictment warrants[4] through litigation at both the trial and appellate levels would set a dangerous precedent for the very reasons thus far articulated, including delaying Government investigations and wasting judicial resources. In sum, the Government's and the public's interest in the expeditious investigation of criminal conduct and the speedy resolution of criminal cases would be significantly harmed by the stay sought.

---

[4] It bears noting that the system provides protection for a defendant's rights by the requirement that any search warrant be authorized by an independent judge or magistrate prior to execution. Accordingly, this is not a situation, unlike the issuance of a subpoena, that occurs without judicial oversight beforehand.

8

## **Conclusion**

For the reasons set forth above, Archer's motion for a stay pending appeal should be denied.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:   /s/ Rebecca Mermelstein_____
     Brian R. Blais
     Aimee Hector
     Rebecca Mermelstein
     Assistant United States Attorneys
     (212) 637-2521/2203/2360

cc:    All counsel of record (by ECF)

[Type text]