H1JTGALP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          16 CR 371 (RA)

5    JASON GALANIS,

6                   Defendant.

7    ------------------------------x

8                                     New York, N.Y.
                                      January 19, 2017
9                                     12:00 p.m.

10
     Before:
11
                        HON. RONNIE ABRAMS,
12
                                         District Judge
13

14                          APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BRIAN BLAIS
17   REBECCA MERMELSTEIN
     AIMEE HECTOR
18        Assistant United States Attorneys

19   LISA SCOLARI
     CHRISTOPHER MADIOU
20        Attorneys for Defendant

21

22

23

24

25

2

H1JTGALP

1                    (In open court, case called)

2              MR. BLAIS:  Good afternoon, your Honor, Brian Blais,

3    Rebecca Mermelstein, and Aimee Hector for the government, and

4    we're joined at counsel table by FBI Special Agent Shannon

5    Bieniek.

6              THE COURT:  Good morning all.

7              Ms. Scolari, good morning.

8              MS. SCOLARI:  Good morning, your Honor, Lisa Scolari

9    for Mr. Galanis.  Mr. Galanis is here, your Honor, he's

10   prepared to enter a plea of guilty to the first three counts of

11   the indictment.  I believe that the agreement has been provided

12   to the Court in advance.

13             THE COURT:  It has.

14             MS. SCOLARI:  And so we're ready to proceed.

15             THE COURT:  Thank you.

16             Good morning to all of you as well.

17             So Mr. Galanis, before I decide whether to accept your

18   plea of guilty, I am going to ask you certain questions so that

19   I can be sure that you understand your rights, that you're

20   pleading guilty voluntarily because you are guilty and not for

21   some other reason.  So it's important that you answer the

22   questions that I'm going to ask you honestly and completely.

23   If at any time you don't understand something, feel free to say

24   so or ask to speak to your attorneys.

25             Ms. Cavale, please place the defendant under oath.

H1JTGALP

1          (Defendant sworn)

2          THE COURT:  You should know that since you are now

3    under oath, if you answer any of my questions falsely you could

4    be charged with a separate crime of perjury.  Do you understand

5    that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  So I'm going to start by asking you

8    questions to ensure that you are competent to plead guilty.

9    These are questions that I ask of every defendant in your

10   situation.  How old are you?

11         THE DEFENDANT:  46.

12         THE COURT:  How far did you go in school?

13         THE DEFENDANT:  Four years of university -- high

14   school graduate, four years of university, and some post grad.

15         THE COURT:  And have you ever been treated or

16   hospitalized for any mental illness?

17         THE DEFENDANT:  No, your Honor.

18         THE COURT:  Have you ever been addicted to drugs or

19   alcohol?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  In the past 24 hours have you taken any

22   drugs, medicine or pills, or drunk any alcoholic beverages?

23         THE DEFENDANT:  I have not.

24         THE COURT:  Is your mind clear today?  By that I mean

25   do you understand what is happening in these proceedings?

H1JTGALP

1          THE DEFENDANT:  I do.

2          THE COURT:  Does either counsel have any doubt as to

3     the defendant's competence to plead guilty at this time?

4          MR. BLAIS:  No, your Honor.

5          MS. SCOLARI:  No, your Honor.

6          THE COURT:  On the basis of Mr. Galanis' responses to

7     my questions, my observations of his demeanor here in court and

8     representations of counsel, I find that he's fully competent to

9     enter an informed plea of guilty at this time.

10          Have you had enough time and opportunity to discuss

11     your case with your attorney, and by that I mean the nature of

12     the charges that you intend to plead guilty to, any possible

13     defenses you may have, and the rights that you will be giving

14     up?

15          THE DEFENDANT:  I have, your Honor.

16          THE COURT:  And has your attorney discussed with you

17     the consequences of pleading guilty?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you satisfied with her representation

20     of you?

21          THE DEFENDANT:  Yes.  And thank you, your Honor, for

22     appointing my attorney.

23          THE COURT:  I am now going to explain to you certain

24     constitutional rights that you have.  These are rights that you

25     will be giving up if you enter a guilty plea.

H1JTGALP

1          First, under the Constitution and laws of the United

2     States, you have a right to plead not guilty to charges in the

3     superseding indictment.  Do you understand that?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  And if you did plead not guilty, you would

6     be entitled under the Constitution to a speedy and public trial

7     by jury on those charges.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  In advance of trial you would have the

10    opportunity to seek supression of any or all of the evidence

11    against you on the basis that it was obtained in violation of

12    the Constitution.  Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  At trial you would be presumed to be

15    innocent, and that means that you would not have to prove that

16    you are innocent.  Instead, the government would need to prove

17    your guilt beyond a reasonable doubt before you could be found

18    guilty.  So even if you did nothing and said nothing at trial,

19    you could not be convicted unless a jury of twelve people

20    agreed unanimously that you are guilty.  Do you understand

21    that?

22         THE DEFENDANT:  Yes, I do.

23         THE COURT:  During trial the witnesses for the

24    prosecution would have to come to court and testify in your

25    presence where you could see them and hear them and your lawyer

H1JTGALP

1    could cross-examine them.  If you wanted to, your lawyer could

2    offer evidence on your behalf.  You would be able to use the

3    Court's power to compel or force witnesses to come to court to

4    testify -- truthfully, of course -- in your defense, even if

5    they didn't want to come.  Do you understand that?

6                    THE DEFENDANT:  Yes, your Honor.

7                    THE COURT:  At trial you would have the right to

8    testify if you wanted to, but you would also have the right not

9    to testify, and if you chose not to testify, that could not be

10   used against you in any way.  So no inference or suggestion of

11   guilt could be made from the fact that you chose not to

12   testify.  Do you understand that?

13                   THE DEFENDANT:  Yes, your Honor.

14                   THE COURT:  At trial and at every stage of your case

15   you would be entitled to be represented by an attorney, and if

16   you could not afford an attorney, one would be appointed at

17   public expense -- meaning free of cost -- to represent you.  Do

18   you understand that?

19                   THE DEFENDANT:  I do, your Honor.

20                   THE COURT:  As I said before, you have the right to

21   plead not guilty.  So even as you sit here now for the purposes

22   of entering a guilty plea, you have the right to change your

23   mind and to go to trial.

24                   But if you do plead guilty and I accept your plea,

25   there will be no trial, and you will be giving up the rights

H1JTGALP

1    that I just described.  If you plead guilty, all that will

2    remain to be done is for me, for the Court, to impose sentence.

3    I will enter a judgment of guilty and I will sentence you after

4    getting whatever submissions I get from you, from your

5    attorney, from the government, as well as a presentence report

6    that is prepared by the probation department.

7         There will be no appeal with respect to whether the

8    government could use the evidence it has against you or with

9    respect to whether you did or did not commit the crime.  Do you

10   understand that?

11        THE DEFENDANT:  Yes, I do.

12        THE COURT:  If you did plead guilty, do you also

13   understand that you will have to give up your right not to

14   incriminate yourself, since I am going to ask you certain

15   questions in order to satisfy myself that you are in fact

16   guilty as charged.  Do you understand that?

17        THE DEFENDANT:  Yes.

18        THE COURT:  So as I understand it, you seek to plead

19   guilty to Counts One, Two and Three of the superseding

20   indictment which charge you with conspiracy to commit

21   securities fraud, securities fraud, and conspiracy to commit

22   investment adviser fraud, is that right?

23        THE DEFENDANT:  That's right.

24        THE COURT:  Could the government please state the

25   elements of the charges in question, please.

H1JTGALP

1          MR. BLAIS:  Yes, your Honor.

2          Your Honor, Count One charges the defendant with

3   conspiracy to commit securities fraud in violation of Title 18,

4   United States Code, Section 371.  That offense has three

5   elements:  First, that two or more persons entered into an

6   unlawful agreement to commit the object of the conspiracy,

7   which in this case is securities fraud; second, that the

8   defendant knowingly and willfully joined in that agreement; and

9   third, that one of the members of the conspiracy committed at

10  least one overt act to further some objective of the

11  conspiracy.

12          As I noted, the object of the conspiracy charged in

13  Count One, as well as the count in Count Two, is securities

14  fraud, which is an offense under Title 15, United States Code,

15  Section 78j(b) and 78ff, as well as Title 17, Section 240.10b-5

16  of the Code of Federal Regulations.  That offense has three

17  elements:

18          First, that in connection with the purchase or sale of

19  securities, the defendant did any one or more of the following:

20  First, employed a device, scheme or artifice to defraud; two,

21  made an untrue statement of a material fact, or omitted to

22  state a material facts which made what was said under the

23  circumstances misleading; or three, engaged in an act, practice

24  or course of business that operated or would operate as a fraud

25  or deceit upon a purchaser or seller.  So that's the first

H1JTGALP

1   element of securities fraud.

2           Second, that the defendant acted unlawfully,

3   knowingly, willfully, and with the intent to defraud.

4           And third, that the defendant used or caused to be

5   used any means or instruments of transportation or

6   communication in interstate commerce, or the use of the mails

7   or of any facility of any national securities exchange in

8   furtherance of the fraudulent conduct.

9           And then finally Count Three charges conspiracy to

10  commit investment adviser fraud in violation of Title 18,

11  United States Code, Section 371.  That offense has the same

12  three elements for Count One, but in this case the object of

13  the conspiracy was to commit investment adviser fraud.  That

14  offense has four elements -- first of all, that offense is a

15  violation of section 80b-6 and 80b-17 of Title 15 of the United

16  States Code, and that offense has four elements:

17          First, that the defendant, or in this case a member of

18  the conspiracy, was an investment adviser.

19          Second, that the defendant agreed with others to do

20  one of the following:  A, employed a device, scheme or artifice

21  to defraud an actual or prospective investment advisory client;

22  two, engaged in a transaction, practice or course of business

23  which operated as a fraud or deceit upon those investment

24  advisory clients or prospective investment advisory clients; or

25  three, engaged in an act, practice or course of business that

H1JTGALP

was fraudulent, deceptive and manipulative.

The third element of investment adviser fraud is that the defendant agreed with others to devise or participate in such alleged device, scheme or artifice to defraud, or engaged in such alleged transaction, practice or course of business knowingly, willfully, and with the intent to defraud.

And finally, that the defendant or a member agreed with others to employ such alleged device, scheme or artifice to defraud, or engaged in such alleged transaction, practice or course of business by the use of mails or an instrumentality of interstate commerce.

THE COURT:  So Mr. Galanis, do you understand that if you were to go to trial the government would need to prove all of those elements beyond a reasonable doubt in addition to proving venue by a preponderance of the evidence?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  So now what I am going to do is I'm going to discuss the maximum penalties for these three crimes.  The maximum means the most that could possibly be imposed.  It doesn't necessarily mean that that's the sentence you will receive, but you have to understand that by pleading guilty you are exposing yourself to the possibility of receiving any combination of punishments up to the maximums that I'm about to describe.

So first, with respect to Count One, with respect to

H1JTGALP

1   your liberty, the maximum sentence for Count One is five years

2   in prison.  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  That term of imprisonment could be

5   followed by a term of supervised release of up to three years.

6   Supervised release means that if you're sentenced to prison,

7   after your release from prison you will be subject to

8   supervision of the probation department.  You will be required

9   to obey certain rules, and if you violate those rules you could

10  be returned to prison without a jury trial to serve additional

11  time even beyond your original sentence.  Do you understand

12  that?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  You should also understand that there's no

15  parole in the federal system, so if you are sentenced to prison

16  you will not be released early on parole, although there is a

17  limited opportunity to earn credit for good behavior.  Do you

18  understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  In addition to those restrictions on your

21  liberty, the punishment for this crime also includes certain

22  financial penalties.  The maximum allowable fine is $250,000 or

23  twice the gain you received from the crime or twice the loss to

24  any victims, whichever is greater.  I'm also required to impose

25  a mandatory special assessment of $100.  Do you understand

H1JTGALP

1    that?

2                   THE DEFENDANT:  Yes.

3                   THE COURT:  In addition, I must order restitution to

4    any persons or entities injured as a result of your criminal

5    conduct, and I can order you to forfeit all property derived

6    from the offense or used to facilitate the offense.  Do you

7    understand that?

8                   THE DEFENDANT:  Yes.

9                   THE COURT:  So with respect to Count Two --

10                  MR. BLAIS:  Your Honor, before we move to Count Two,

11   as your Honor may be aware, the defendant pled guilty as to a

12   different indictment that is currently pending before Judge

13   Castel, and he is scheduled to be sentenced on that matter on

14   February 15.  If your Honor could advise the defendant with

15   respect to the penalties that potentially could be imposed --

16   not only with respect to Count One but Counts Two and Three as

17   well -- that any sentence that your Honor may impose in this

18   matter could be imposed consecutively to any sentence that may

19   be imposed by Judge Castel.

20                  THE COURT:  Yes, I intended to do that, but I'm happy

21   do that now.

22                  Do you understand that any sentence that you get in

23   this case could be consecutive -- meaning on top of -- any

24   sentence that is imposed by Judge Castel.  Do you understand

25   that?

H1JTGALP

1              THE DEFENDANT:  Yes, your Honor.

2              THE COURT:  So with respect to Count Two, the maximum

3     term of imprisonment for that crime is 20 years in prison,

4     there's a maximum term of supervised release of three years, a

5     maximum fine of $5 million or twice the gain you received from

6     the crime or twice the loss to any victims, whichever is

7     greater.  And once again, I am required to impose the $100

8     special assessment and can order restitution and order you to

9     forfeit all property derived from the offense or used to

10    facilitate the offense.

11             Now with respect to Count Three, the maximum term of

12    imprisonment for Count Three is five years.  That could be

13    followed by up to three years of supervised release.  The

14    maximum allowable fine is $250,000 or twice the gain you

15    received from the crime or twice the loss to any victims,

16    whichever is greater.  And once again, with respect to Count

17    Three, I must order restitution to any person or entity injured

18    as a result of your criminal conduct, and can order you to

19    forfeit all property derived from the offense or used to

20    facilitate the offense.  And again, I must impose the mandatory

21    special assessment of $100.

22             So do you understand that, taking these counts

23    together, it's possible that you could be sent to prison for 30

24    years in addition to any sentence you may get from Judge

25    Castel?  Do you understand that?

H1JTGALP

1          THE DEFENDANT:  Agonizingly, yes, I do.

2          THE COURT:  Sorry?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Do you understand all the maximum

5    sentences that I just described with respect to these three

6    crimes?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Now you should be aware that the

9    punishments I just described are those that may be part of a

10   sentence, but being convicted of a felony may have other

11   consequences.

12          You are a United States citizen, is that correct?

13          THE DEFENDANT:  Yes.

14          THE COURT:  So you should understand that as a result

15   of your guilty plea you may lose valuable civil rights, to the

16   extent that you have them now, such as the right to vote, the

17   right to hold public office, the right to serve on a jury, and

18   the right to possess any kind of firearm.  Do you understand

19   that?

20          THE DEFENDANT:  I do.

21          THE COURT:  Now in imposing sentence, federal judges

22   are required to consider the recommendations of the federal

23   sentencing guidelines.  The guidelines are a complicated set of

24   rules for determining an appropriate sentence, and although

25   judges are required to take into account the sentencing

H1JTGALP

 1  guidelines when determining a sentence, in the end, the judge

 2  is required to give the sentence that she believes best

 3  satisfies the purposes of the criminal law as set forth in a

 4  provision of the law 18, United States Code, Section 3553(a),

 5  even if that is higher or lower than the guidelines

 6  recommendation.  Do you understand that?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  Have you discussed the sentencing

 9  guidelines with your attorney?

10          THE DEFENDANT:  Yes, I have.

11          THE COURT:  Do you understand that the guidelines are

12  only recommendations to the Court?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Now I understand that you have entered

15  into a written plea agreement with the government.  I have what

16  appears to be the original agreement.  It's dated December 19.

17  It appears to be signed by you and your attorney on January 19.

18  I'm going to mark it as Court Exhibit 1, and I'm going to ask

19  my deputy, Ms. Cavale, to show it to you.

20          Is that your signature on the last page?

21          THE DEFENDANT:  It is.

22          THE COURT:  Before signing this, did you read the

23  entire plea agreement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Did you discuss it with your attorney?

H1JTGALP

1              THE DEFENDANT:  Yes.

2              THE COURT:  I understand that it's a long document,

3       contains some technical legal language, but after discussing it

4       with your attorney, do you understand all the terms of the

5       agreement?

6              THE DEFENDANT:  I do.

7              THE COURT:  I'm going to ask the government to

8       summarize the terms of the agreement, please.

9              MR. BLAIS:  Yes, your Honor.  The defendant under this

10      agreement agrees to enter a plea of guilty to Counts One, Two

11      and Three.  The maximum potential penalties for those various

12      offenses are set forth in the agreement as already indicated on

13      the record by your Honor.

14             The defendant agrees to the entrance of a money

15      judgment in connection with forfeiture of $43,277,436.  In

16      connection with that, the parties have executed a consent order

17      of forfeiture which we provided to the Court both in advance of

18      this proceeding and signed versions at the start of this

19      proceeding.

20             There is an agreement between the parties as to the

21      applicable guidelines offense range.  The parties agree that

22      the applicable offense level is 34, that the applicable

23      criminal history category is three, the consequence of which is

24      a sentencing guidelines range of 188 to 235 months of

25      imprisonment, and an applicable fine range of 35,000 to

H1JTGALP

1   $5 million.

2          The parties agree that neither a downward or upward

3   departure from that sentencing guidelines range is appropriate,

4   but that either party may argue for a variance either above or

5   below that particular guidelines level.

6          Further, both parties agree to certain limitations of

7   their ability to appeal in this matter.  In particular, the

8   defendant agrees that he will not appeal any sentence that is

9   within or below the stipulated guidelines range of 188 to 235

10  months imprisonment, and the government agrees that it will not

11  appeal any sentence above that.  There are similar provisions

12  with respect to the fine and the forfeiture amounts.

13         I think those are the key pertinent provisions of the

14  agreement.

15         THE COURT:  Thank you.

16         Mr. Galanis, I will follow up on a couple of those

17  provisions.  So with respect to the guidelines sentencing range

18  that you have agreed to with the government of 188 to 235

19  months, I want to make sure that you understand that that means

20  that neither you nor the government can argue for a different

21  guidelines calculation, although you can seek a sentence

22  outside of that range.  Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  You should understand that this agreement

25  does not bind me in any way.  I'm required to make my own

1    independent calculation of the sentencing guidelines and to

2    impose a sentence based on what I believe is appropriate in

3    your case.  So you have to understand that my calculation may

4    differ from the one you agreed to with the government.  I'm not

5    saying that it will, but I want to let you know that even if it

6    does differ, you won't be allowed to withdraw your plea.  Do

7    you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And under the agreement, the government

10   also already mentioned that you're not only pleading guilty but

11   you're admitting the forfeiture allegations with respect to

12   Counts One, Two and Three of the superseding indictment.  Do

13   you understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you also understand that under the

16   agreement you're giving up your right to appeal or otherwise

17   challenge your sentence as long as I sentence you to 188 to 235

18   months of imprisonment or less.  So if I sentence you to more

19   than 235 months in prison, you have the right to appeal your

20   sentence.  But if I sentence you to 235 months or less, you

21   can't appeal under this agreement.  Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do you also understand that under this

24   agreement you are waiving other rights of appeal, including the

25   right to appeal your plea and conviction based on the

1   government's failure to disclose any exculpatory or other

2   discovery material that was not produced before the date of

3   your agreement.  Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Did you willingly sign this agreement?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Has anyone threatened, bribed or forced

8   you either to sign the plea agreement or to plead guilty?

9            THE DEFENDANT:  No.

10           THE COURT:  And other than what is in the plea

11  agreement, has anyone offered you any inducement to plead

12  guilty?

13           THE DEFENDANT:  No.

14           THE COURT:  Has anyone made any promise to you as to

15  what your sentence will be?

16           THE DEFENDANT:  No.

17           THE COURT:  Do you understand that if anyone attempted

18  to predict what your sentence will be, that their prediction

19  could be wrong?

20           THE DEFENDANT:  Yes.

21           THE COURT:  And I say that because you should

22  understand that no one, not your attorney, not the government,

23  not even I can be sure today what your sentence will be because

24  that won't be determined until I receive the presentence report

25  and I have decided what the correct calculation of the range

H1JTGALP

1  recommended by the guidelines is and whether there's any basis

2  not to follow that range.  So even if your sentence is

3  different from what you had hoped for or expected, you won't be

4  allowed to withdraw your plea.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And now with respect to the consent order

7  of forfeiture, I'm going to ask my deputy to hand this to you

8  as well.  And I'm marking this as Court Exhibit 2.

9          Is that your signature?

10          THE DEFENDANT:  Yes, it is.

11          THE COURT:  Did you review this consent order of

12  forfeiture with your attorney before signing it?

13          THE DEFENDANT:  I did.

14          THE COURT:  And do you understand that as a result of

15  the offenses charged in Counts One, Two and Three of the

16  indictment, you are consenting to a money judgment in the

17  amount of $43,277,436 in United States currency.  Do you

18  understand that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  And do you consent to this forfeiture

21  order?

22          THE DEFENDANT:  I do, your Honor.

23          THE COURT:  So now that you have been advised of the

24  charges against you and the possible penalties you face and the

25  rights you're giving up, is it still your intention to plead

H1JTGALP

1    guilty?

2             THE DEFENDANT:  It is.

3             THE COURT:  So now I'm going to ask you the official

4    question with respect to Counts One, Two and Three, which is

5    how you plead.

6             So with respect to Count One of the superseding

7    indictment, how do you plead?

8             THE DEFENDANT:  Guilty, your Honor.

9             THE COURT:  With respect to Count Two of the

10   superseding indictment, how do you plead?

11            THE DEFENDANT:  Guilty.

12            THE COURT:  And with respect to Count Three?

13            THE DEFENDANT:  Guilty.

14            THE COURT:  Do you admit or deny the forfeiture

15   allegations in the superseding indictment?

16            THE DEFENDANT:  I admit.

17            THE COURT:  Tell me in your own words what you did

18   that makes you believe that you're guilty of these crimes.

19            THE DEFENDANT:  Your Honor, as to Counts One and Two,

20   between March 2014 and April 2016 I agreed with others to

21   withhold material information related to conflicts of interest

22   in connection with the purchase and sale of bonds.

23            With respect to Count Three, your Honor, between

24   May 2014 and April 2016 I agreed with others to engage in

25   deceptive and manipulative business transactions in connection

1    with an investment adviser.

2              MS. SCOLARI:  Your Honor, I would just add, as to the

3    interstate commerce impact issue, that emails were used in the

4    course of the admissions that Mr. Galanis just made.

5              THE COURT:  With respect to the conduct relevant to

6    both or all three counts?

7              MS. SCOLARI:  Yes, that's correct.

8              THE COURT:  And when you did this, did you know what

9    you were doing was wrong and illegal?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And does the government want to follow up

12   with a few questions?

13             MR. BLAIS:  Your Honor, I think his allocution is

14   actually -- although minimalist, is actually legally

15   sufficient.  I could make a proffer with respect to venue --

16             THE COURT:  All right.

17             MR. BLAIS:  -- as to these counts.

18             With respect to all counts, there were meetings at

19   which the defendant attended that were held in New York,

20   including meetings with the investment adviser who was

21   responsible for the placement of the bonds that are at issue

22   here.

23             In addition, the broker-dealer that served as the

24   placement agent for these particular bonds was located here in

25   New York.  Additionally, there were various bonds that were

H1JTGALP

1    issued as part of this scheme to a co-conspirator that were

2    housed at a brokerage firm here in New York.  And additionally,

3    certain proceeds of this offense were spent at various

4    locations here in New York, including restaurants.

5            And I could also, if the Court wishes, make a further

6    proffer as to what the government believes its evidence at

7    trial would show in this matter.

8            THE COURT:  Yes, I will ask you that momentarily.

9            First of all, with respect to venue, does the

10   defendant contest venue?

11           MS. SCOLARI:  No, we stipulate, your Honor.

12           THE COURT:  Are there any additional questions that

13   you think I should ask with respect to intent to defraud?

14           Do you think the allocution is sufficient?

15           MR. BLAIS:  It certainly wouldn't be harmful to ask

16   if, when the defendant took those various actions, he was

17   acting with an intent to defraud.  We wouldn't object to asking

18   that question.

19           THE COURT:  Mr. Galanis, what was your intent?  Was

20   your intent to defraud at the time you took the actions that

21   you did?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  I would like the government to now please

24   summarize what its evidence would be if the case were to go to

25   trial.

H1JTGALP

1          MR. BLAIS:  Thank you, your Honor.

2          Your Honor, at any trial in this matter the government

3    would prove through cooperating witnesses, other percipient

4    witnesses, substantial documentary evidence, including the

5    tracing of various proceeds from these various bond issues, the

6    following:

7          First, that the defendant agreed with others -- and

8    this is with respect to Counts One and Two -- that the

9    defendant agreed with others and worked with a Native American

10   tribal entity called the Wakpamni Lake Community Corporation.

11   In working with that Native American tribal entity, caused the

12   issuance of bonds by that tribal entity that were issued in the

13   market totaling over $60 million.

14         In connection with this bond issuance, the government

15   would prove at trial at least three variants of securities

16   fraud that -- Mr. Galanis pled specifically to one of them,

17   which is that they withheld material information regarding

18   conflicts from the ultimate investors in those bonds.

19         I believe the government would also prove at trial two

20   additional flavors of fraud, if you will:  First, that the

21   proceeds of those bonds, according to the documents governing

22   those bonds, were to be invested in a particular manner in

23   order to generate proceeds sufficient to pay the interest on

24   the bonds, as well as to make regular payments to the Indian

25   tribal entity to be used for economic development purposes.

H1JTGALP

1          The government's evidence at trial would show that all

2     the proceeds were not invested in the manner specified in the

3     governing documents.  And in fact, that substantial portions of

4     the proceeds -- in the case of Mr. Galanis, over $8 million --

5     were diverted for personal purposes, including luxury travel,

6     clothing, restaurant expenses, hotel expenses, and other

7     personal expenses of that nature.

8          And finally, the government would prove that

9     Mr. Galanis caused certain of the bond proceeds to be recycled

10    to purchase additional issuances of the bonds, the result of

11    which, that although there were bonds in the face amount of

12    over $60 million, there were in fact proceeds of substantially

13    less than that because certain of the proceeds had been

14    recycled to purchase additional issuances of the bonds.

15         So that's what the government believes it would prove

16    in connection with Counts One and Two in terms of the

17    securities fraud and conspiracy to commit securities fraud.

18         In connection with Count Three, the conspiracy to

19    commit investment adviser fraud, the government would prove at

20    trial that the defendant agreed with others, including the

21    leadership of two different investment advisory firms, one

22    called Hughes Capital Management, the other called Atlantic

23    Advisers, that he agreed with the leaders of that firm to

24    defraud the clients of those firms.

25         One manner in which that was done was, as the

H1JTGALP

1    defendant allocuted to, by withholding from them substantial

2    conflicts of interest that existed with respect to these bonds.

3    Two, that he caused, with others in the conspiracy, these bonds

4    that I just referenced to be placed in the client accounts at

5    Hughes and Atlantic.  In many cases, those investments were

6    contrary to investment advisory agreements with the particular

7    clients because those investment advisory agreements

8    prohibited, for example, investments in unrated bonds, which

9    these particular bonds were.

10          And finally, that there was no -- at the time that

11   these bonds were placed in the client accounts, there was no --

12   and still to this date there is no ready secondary market for

13   such bonds such that the clients who were, without any

14   disclosure, invested in these bonds have been to date unable to

15   sell them or to basically get out of the positions that they

16   held in these particular bonds.

17          THE COURT:  All right.  Do government and defense

18   counsel agree there's a sufficient factual predicate for the

19   guilty plea?

20          MR. BLAIS:  Yes, your Honor.

21          MS. SCOLARI:  Yes, your Honor.

22          THE COURT:  So Mr. Galanis, because you acknowledge

23   that you are in fact guilty as charged in Counts One, Two and

24   Three of the superseding indictment, and because I'm satisfied

25   that you understand your rights, including your right to go to

H1JTGALP

1    trial, that you're aware of the consequences of your plea,

2    including the sentence which may be imposed, and because I find

3    that you are knowingly and voluntarily pleading guilty, I

4    accept your guilty plea to Counts One, Two and Three of the

5    superseding indictment.

6            The probation department will want to interview in

7    connection with a presentence report that I mentioned earlier

8    that it will prepare.

9            Ms. Scolari, would you like to be present for that

10   interview?

11           MS. SCOLARI:  Yes, definitely, your Honor.

12           THE COURT:  If you chose to speak to the probation

13   department, Mr. Galanis, please make sure that everything you

14   say is truthful and accurate.  I'm going to read that report

15   very carefully.  You also have the opportunity to object to

16   anything in it, both in advance of and at sentencing.  So if

17   there are any mistakes or errors, in your view, raise them with

18   your attorney and they will be raised with me.

19           The sentencing is set for --

20           DEPUTY CLERK:  May 5, 2017 at 11:00 a.m.

21           THE COURT:  The government shall provide the probation

22   officer with its factual statement within one week, and defense

23   counsel shall arrange for the defendant to be interviewed by

24   the probation department within the next two weeks.

25           I'll just refer counsel to my individual rules and

H1JTGALP

1    practices in criminal cases available on the court website.

2    Among other things, defense submissions are due two weeks prior

3    to sentencing and the government's submission due one week

4    prior to sentencing.

5              Are there any other applications at this time?

6              MS. SCOLARI:  Yes, your Honor.  I have given the

7    government a copy of the proposed order that we would like to

8    submit to the Court.

9              Mr. Galanis is currently being housed in MCC.  As your

10   Honor knows, the MCC education department relies very much on

11   outside volunteers and sometimes inmates who are able to teach

12   classes.  We're asking that the Court issue an order actually

13   worded that it's a request to the marshals that Mr. Galanis be

14   kept at MCC.

15             He's teaching three different courses at MCC now, so

16   he's not only doing something to benefit him, but also several

17   other inmates.  The classes are English and different business

18   practices having nothing to do with investing.  But the bottom

19   line is he has 30 or so inmates attending these classes, and

20   they're tremendously beneficial to the people who are there, as

21   well as giving him something very constructive to do.

22             My experience -- perhaps the Court knows this -- is

23   that at MDC they don't have the capacity and they have

24   virtually -- they have no programs right now.  I don't even

25   know, frankly, if there's an education department because I

H1JTGALP

1   don't know that they have the funds.

2          The marshals -- obviously the Court can order -- I

3   don't know that the marshals would appreciate an order, that's

4   why we worded the order indicating that it's a request.

5          I have shown a copy to the government, and Mr. Blais

6   can tell the Court the government's position.

7          THE COURT:  Does the government have any objection?

8          MR. BLAIS:  Your Honor, we take no objection on BOP

9   designation issues.

10         THE COURT:  All right.  I may just change the language

11  a little bit just to make clear -- I know the marshals' job can

12  be very difficult at times to coordinate everybody, but that

13  they shall do this if it's feasible.  But I'm happy to make

14  that request on Mr. Galanis's behalf.

15         MS. SCOLARI:  Thank you, your Honor.

16         THE COURT:  Is there anything else at this time?

17         MS. SCOLARI:  Would it be possible for the Court to

18  make any changes now so that we could give it to the marshals

19  to take --

20         THE COURT:  I will do it.  Wait here a few minutes and

21  Ms. Cavale will assist.

22         MR. BLAIS:  Nothing from the government.

23         THE COURT:  Thank you, we're adjourned.

24                            o0o

25